**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SUSAN SOO J KO and
SANA HAMID ALI,
on behalf of Plaintiffs and
the class members described
herein,

Plaintiffs,

vs.

UNIVERSITY OF THE POTOMAC
AT CHICAGO LLC and
POTOMAC COLLEGE, LLC,
both doing business as
University of the Potomac;
LINDEN EAST, LLC;
ROSANNA DEPINTO,
also known as ROSANNA
MASTRANTUONO;
ARTHUR L. SMITH JR. ,
also known as LEE SMITH;
and ANDREA FORD;

Defendants.

1:24-cv-1455

## COMPLAINT – CLASS ACTION

1. Plaintiffs bring this action to secure redress for misrepresentations concerning the degree-granting authority of the former Chicago campus of the University of the Potomac, a for-profit school catering to foreign students.

## JURISDICTION AND VENUE

2. The Court has jurisdiction under 28 U.S.C. §1332(d) (Class Action Fairness Act), 28 U.S.C. §1331 (general federal question), 18 U.S.C. §1964 (RICO) and 28 U.S.C. §1367 (supplemental jurisdiction).

3. Venue is proper because all claims arise out of the operation of a school in Illinois.

4. Personal jurisdiction is proper for the same reason.

## PARTIES

### Plaintiffs

5. Plaintiff Soo is a citizen of South Korea, residing in Illinois. She is a medical doctor licensed in the Republic of Korea (South Korea). She has a B.S. in chemical engineering and a 2019 M.D. degree, from Korea. She has sought positions in healthcare administration and information technology in the United States while studying to take medical licensing examinations in the United States.

6. Plaintiff Sana Hamid Ali is a citizen of India, residing in Illinois. She is a dentist licensed in India. She was studying to take licensing examinations in the United States.

### Defendants

7. Defendant University of the Potomac at Chicago, LLC, was a limited liability company organized under Illinois law with its principal address at 1401 H Street NW, Suite 100, Washington, DC 20005. Its existence was terminated August 11, 2023. On information and belief, none of its members was a citizen of Illinois.

8. Defendant Potomac College, LLC, doing business as University of the Potomac, is a limited liability company organized under Delaware law with offices at 1401 H Street NW, Suite 100, Washington, DC 20005, and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043. It also uses the address of 301 Congress Avenue, 22nd Floor, Austin, TX, 78701. Its registered agent and office is National Registered Agents Inc., 1015 15th St. NW, Suite 1000, Washington, DC 20005 or National Registered Agents, Inc., 4701 Cox Road, Suite 285, Glen Allen, VA, 23060. On information and belief, none of its members was a citizen of Illinois.

9. University of the Potomac is a private, for-profit school.

10. The Chicago campus had 100 to 367 students at any one time.

11. Defendant Linden East, LLC, is a limited liability company organized under Delaware law. It uses the address 301 Congress Avenue, 22d floor, Austin, TX 78701-2961. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center 1209

Orange St., Wilmington, DE 19801.

12. On information and belief, none of its members was a citizen of Illinois.

13. Linden East, LLC is the 100% equity owner of Potomac College, LLC and was the 100% equity owner of University of the Potomac at Chicago, LLC.

14. Prior to June 25, 2020, the Chicago campus of University of the Potomac was owned by a now-dissolved company, Business Industrial Resources ("BIR"), which was owned by Linden East, LLC. Linden East, LLC, operated the campus.

15. On June 25, 2020, Potomac College, LLC d/b/a University of the Potomac acquired all of the assets of BIR from Linden East, LLC.

16. At all relevant times prior to August 11, 2023, Defendants University of the Potomac at Chicago, LLC, Potomac College, LLC, and Linden East, LLC, all did business as "University of the Potomac," without distinction between the entities involved in the various campuses. As set forth below, Defendant Andrea Ford, nominally an executive of Potomac College, LLC, dealt with the Illinois Board of Higher Education ("IBHE") relating to degree-granting authority of the Chicago campus.

17. "University of the Potomac" had three campuses: 828 S. Wabash Avenue, 2nd Floor, Chicago, IL 60605; 1401 H Street NW, Suite 100, Washington, DC 20005; and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043. There were also operations at 3601 West Devon, Chicago, Illinois.

18. Defendants Rosanna DePinto, also known as Rosanna Mastrantuono, and Arthur L. Smith Jr., also known as Lee Smith, ran the Chicago campus. DePinto used the title "campus director," and functioned as such.

19. On information and belief, Defendant DePinto was employed by Linden East, LLC.

20. Defendant Rosanna DePinto may be found at 5 Meadowlark Ct., Roselle, IL 60172-4729 or 27 S. Howard Ave., #A, Roselle, IL 60172.

21. Defendant Arthur L. Smith, Jr., , also known as Lee Smith, was the Provost of the

University of the Potomac. He also used the title "Dean of Academics at Chicago Campus." He may be found at 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043.

22. Defendant Andrea Ford was Chief Executive Officer of University of the Potomac from November 2021 to present and Chief Operating Officer from August 2015 to October 2022. On information and belief, she resides at 11 Aster Lane, Stafford, VA 22554.

**FACTS – GENERAL**

23. Throughout the period from 2019 to 2023, the Illinois Board of Higher Education ("IBHE") authorized the Chicago campus of University of the Potomac to offer only non-degree programs of study. (Exhibit A) "[T]he University of the Potomac was not provided authority to grant degrees." (Exhibit B)

24. On September 21, 2020, the IBHE informed Andrea Ford that "University of Potomac does not have approval to operate as a degree granting institution." (Exhibit C)

25. Andrea Ford was responsible for most or all of the interaction between IBHE and the University of the Potomac.

26. On August 14, 2019, IBHE informed University of the Potomac that it had not properly applied for authority to grant degrees. (Exhibit D)

27. On September 29, 2020, University of the Potomac held a virtual roundtable discussion with students, in which no mention was made of the lack of IBHE approval.

28. On February 10, 2022, U.S. Immigration and Customs Enforcement warned the University of the Potomac that it was operating unapproved locations in Chicago. (Exhibit E).

29. Notwithstanding this, the Chicago campus represented that it offered degree-granting programs, as shown by Exhibit F.

30. Exhibit F was sent to most or all of the students at the Chicago campus on the date it was sent. Both Plaintiffs received it.

31. The Chicago campus had 100-367 students in degree programs at any one time.

32. The authority of the Chicago campus to issue degrees was particularly material to

foreign students such as Plaintiffs, in that attending a degree-granting institution that complies with the regulatory requirements of the state where the campus is located (those of IHBE) was necessary to maintain their visa status.

## FACTS RELATING TO PLAINTIFF SOO

33. In reliance on the representations that it was entitled to offer degree-granting programs, Plaintiff Soo enrolled at the Chicago campus for a masters in healthcare administration degree from September 2019 to April 2022, when she graduated with the purported degree.

34. Plaintiff Soo paid $35,000 tuition for the program and spent nearly three years in the program.

35. Plaintiff Soo paid tuition using credit cards. Payments were transmitted electronically from the bank to the University of the Potomac. Statements showing the payments were sent by mail or electronic transmission to Plaintiff Soo.

36. The sums paid by Plaintiff Soo are typical of Defendants' tuition charges.

37. As a result of Defendants' deception, Plaintiff Soo suffered lost time and income.

38. Plaintiff Soo did not discover until 2023 that the Chicago campus was not authorized to offer degree-granting programs.

39. In April 2022, Plaintiff Soo requested an enrollment letter specifying the location of the Chicago campus in order to show that she was qualified for employment.

40. After making inquiries about Defendants' qualification to issue degrees, Plaintiff Soo discovered that the Chicago campus was not authorized to offer degree-granting programs.

## FACTS RELATING TO PLAINTIFF SANA HAMID ALI

41. In reliance on the same representations that it was entitled to offer degree-granting programs, Plaintiff Sana Hamid Ali enrolled at the Chicago campus for a masters in healthcare administration degree in January 2019.

42. In April 2022, Ms. Ali requested enrollment-related documents. The issuance of such documents is prohibited without IBHE authority.

43. Instead of issuing the requested documents, De Pinto, the Chicago campus director, without the knowledge or consent of Ms. Ali, transferred her enrollment to the University of the Cumberlands and provided Ms. Ali with enrollment documents issued by the University of the Cumberlands.

44. Ms. Ali eventually learned that this had been done, and was done because the Chicago campus was not authorized to issue degrees or the enrollment document for international students.

45. Ms. Ali also paid tuition for the program and spent nearly three years in the program.

46. As a result of Defendants' deception, Plaintiff Ali suffered lost time and income.

**CLASS ALLEGATIONS**

47. Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

48. Plaintiffs request that this Court certify a class of all persons who were enrolled in a purported degree-granting program at the Chicago campus of the University of the Potomac.

49. The potential number of class members exceeds 100, and the class is so numerous that joinder would be impracticable.

50. There are questions of fact and law which are common to all members of the class, which common questions predominate over any questions affecting individual members of the class.

51. All members of the class have been subject to and affected by a uniform course of conduct, consisting of the misrepresentation and failure to disclose the degree-granting status of the Chicago campus.

52. The common questions of law and fact include, but are not limited to:

a. Whether Defendants misrepresented to students that the Chicago campus was a degree-granting institution;

b. Whether Defendants intended that students rely upon the concealment,

suppression, or omission of the material fact that the Chicago campus was not authorized to grant degrees;

c. Whether Defendants' misrepresentations and omissions regarding accreditation constitute a deceptive act or practice under the ICFA;

d. Whether Defendants' conduct is unfair under the ICFA such that it offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers; and

e. Whether Defendants owe a duty to students to refrain from providing false and misleading information.

53. Plaintiffs' claims are typical of the claims of the class members. Plaintiffs and class members' claims are based on the same legal and factual theories.

54. Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of, the putative class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other putative class members, who each have the same claims. Plaintiffs are members of the putative class and their interests coincide with, and are not antagonistic to, those of the other putative class members.

55. Plaintiffs are represented by counsel who are experienced in litigating complex consumer protection cases and class action matters in both state and federal courts and who have extensive knowledge on issues of higher education law, consumer protection, and student debt.

56. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Defendants have acted in the same unlawful manner with respect to all class members;.

b. A legal ruling concerning the unlawfulness of Defendants' representations and omissions would vindicate the rights of every class member; and

c. Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time,

effort, and expense as well as prevent possible inconsistent results. Litigating individual lawsuits in the present case would be a waste of judicial resources and addressing the common issues in one action would aid judicial administration.

**COUNT I – ICFA – MISREPRESENTATION**

57. Plaintiffs incorporate the allegations in the foregoing paragraphs.

58. This claim is against all Defendants.

59. The ICFA makes it unlawful to employ:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

60. As set forth above, Defendants engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under 815 ILCS 505/2.

61. These deceptive acts or practices include, but are not limited to, misrepresentations to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

62. These misrepresentations were contained in widely distributed materials received and reviewed by Plaintiffs and the class.

63. Defendants intended for Plaintiffs and the class to rely upon these misrepresentations.

64. Defendants' violations took place repeatedly and were designed to mislead and deceive students regarding material facts about University of the Potomac.

65. As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm, including costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value

of their course credits and degrees, among other harms.

66. Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i. Compensatory damages;

ii. Punitive damages;

iii. Reasonable attorney's' fees, litigation expenses an and costs under the ICFA; and

iv. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT II – ICFA – OMISSIONS OF MATERIAL FACT**

67. Plaintiffs incorporate the allegations in the foregoing paragraphs.

68. This claim is against all Defendants.

69. The ICFA makes it unlawful to employ:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

70. As set forth above, Defendants have engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under Section 2 of the ICFA., 815 ILCS 505/2.

71. The deceptive acts or practices include, but are not limited to, the failure to disclose to Plaintiffs and the class that University of the Potomac was not authorized to grant degrees at the Chicago campus.

72. Defendants' violations took place repeatedly and were designed to conceal,

suppress, and omit material facts regarding University of the Potomac's authority to grant degrees from Plaintiffs and the class.

73. As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of debt incurred in order to attend University of the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

74. Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i. Compensatory damages;

ii. Punitive damages;

iii. Reasonable attorney's' fees, litigation expenses an and costs under the ICFA; and

iv. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT III – ICFA – UNFAIRNESS**

75. Plaintiffs incorporate the allegations in the foregoing paragraphs.

76. This claim is against all Defendants.

77. To determine whether conduct is unfair, Illinois courts consider whether the practice offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to customers.

78. A practice offends public policy when it violates a standard of conduct contained in an existing statute, regulation, or common law doctrine that typically applies to such a situation.

79. The Illinois Administrative Code contains a public policy against false, erroneous, or

misleading statements to students and the public regarding, among other things, "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." 23 Ill. Adm. Code §1030.60(a)(7).

80. Through Defendants' misrepresentations and omissions regarding the nature and extent of University of the Potomac's institutional accreditation, Defendants violated public policy, including the Illinois Administrative Code.

81. Defendants' misrepresentations and omissions regarding the nature and extent of University of the Potomac's accreditation therefore offend public policy and are unfair under the ICFA.

82. Defendants' misrepresentations and omissions are also immoral, unethical, and oppressive under the ICFA.

83. Defendants' conduct caused substantial injury to large numbers of consumers.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i. Compensatory damages;

ii. Punitive damages;

iii. Reasonable attorney's' fees, litigation expenses an and costs under the ICFA; and

iv. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT IV – NEGLIGENT MISREPRESENTATION**

84. Plaintiffs incorporate the allegations in the foregoing paragraphs.

85. This claim is against Defendants University of the Potomac At Chicago LLC, Potomac College, LLC and Linden East, LLC.

86. Defendants, as the providers of educational services, represented that the Chicago campus of the University of the Potomac was authorized to grant degrees, when it was not.

87. At the time of these representations, Defendants knew or should have known that they were false.

88. Defendants owed Plaintiffs and the class a duty to refrain from providing false and misleading information.

89. Defendants were required to disclose "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." 23 Ill. Adm. Code §1030.60(a)(7).

90. Defendants breached that duty by misrepresenting and omitting material facts about University of the Potomac's authority to grant degrees to students attending the Chicago campus.

91. These misrepresentations, upon which Plaintiffs and class members reasonably and justifiably relied, were intended to, and actually did induce, Plaintiffs and the class to remain enrolled at University of the Potomac.

92. Defendant's negligent misrepresentation caused damage to Plaintiffs and the class, who are entitled to damages and other legal and equitable relief.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i. Compensatory damages;

ii. Punitive damages;

iii. Reasonable attorney's' fees, litigation expenses an and costs under the ICFA; and

iv. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT V – FRAUDULENT CONCEALMENT**

93. Plaintiffs incorporate the allegations in the foregoing paragraphs.

94. This claim is against Defendants University of the Potomac At Chicago LLC, Potomac College, LLC and Linden East, LLC.

95. Defendants concealed from Plaintiffs and the class that University of the Potomac Chicago campus was not authorized to grant degrees.

96. This information was material to students in deciding whether to enroll and remain enrolled at University of the Potomac.

97. Whether degrees are authorized is highly material to students' decision to enroll and remain enrolled in an institution of higher education.

98. Defendants had a duty to inform Plaintiffs and the class about University of the Potomac's lack of degree granting authority, as well as a duty to not make false or misleading statements concerning the nature and extent of University of the Potomac's degree-granting authority.

99. The Illinois Administrative Code required Defendants to "accurately describe" all "material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll." Ill. Adm. Code tit. 23 § 1030.60(a)(7).

100. Defendants could have, but did not, publicly disclose the truth about University of the Potomac's degree-granting authority.

101. Due to Defendants' fraudulent concealment, as well as Defendants' affirmative representations, Plaintiffs and the class had no reason to seek out alternative sources of information regarding University of the Potomac's degree-granting authority status.

102. As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of debt incurred in order to attend University of the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i. Compensatory damages;

ii. Punitive damages;

iii. Reasonable attorney's' fees, litigation expenses an and costs under the ICFA; and

iv. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT VI – RICO**

103. Plaintiffs incorporate the allegations in the foregoing paragraphs.

104. This claim is against Defendants Linden East, LLC; Rosanna De Pinto, Arthur L. Smith Jr. , also known as Lee Smith; and Andrea Ford, who are the RICO persons.

105. The University of the Potomac consisted of multiple legal entities and was the RICO "enterprise."

106. The enterprise affected interstate and foreign commerce, in that it had locations in three states and sought foreign students.

107. De Pinto and Smith operated the Chicago campus and were employees of one or more of the entities comprising University of the Potomac.

108. Ford was a principal executive of and was employed by Potomac College, LLC d/b/a University of the Potomac.

109. Linden East, LLC owned the University and directed its activities.

110. Defendants conducted the affairs of the University of the Potomac through a pattern of mail and wire fraud, in violation of 18 U.S.C. § 1341 and 1343.

111. 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing,

shall be fined under this title or imprisoned not more than 20 years, or both. . . .

112. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

113. The conduct complained of lasted from 2019 through 2023 and affected at least 100 victims.

114. Use of interstate wires included the sending of emails that represented that the Chicago campus was authorized to grant degrees and the receipt of payments.

115. Use of mails and wires included receipt of payments from Plaintiffs and other students.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class and against Defendants for:

i. Treble damages;

ii. Reasonable attorney's' fees, litigation expenses and costs'

iii. Such other relief as the Court deems just and appropriate.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Cassandra P. Miller (ARDC 6290238)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\40344\Pleading\Complaint (revised DAE)_Pleading.WPD