**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SUSAN SOO J KO and )
SANA HAMID ALI, )
on behalf of Plaintiffs and )
the class members described )
herein, )
                       )
         Plaintiffs, )
                       )
       vs. )        1:24cv1455
                       )
UNIVERSITY OF THE POTOMAC )
AT CHICAGO LLC and )
POTOMAC COLLEGE, LLC, )
both doing business as )
University of the Potomac; )
LINDEN EAST, LLC; )
ROSANNA DEPINTO, )
also known as ROSANNA )
MASTRANTUONO; )
ARTHUR L. SMITH JR., )
also known as LEE SMITH; )
and ANDREA FORD; )
                       )
         Defendants. )

## FIRST AMENDED COMPLAINT – CLASS ACTION

1.       Plaintiffs bring this action to secure redress for misrepresentations concerning the degree-granting authority of the former Chicago campus of the University of the Potomac, a for-profit school catering to foreign students. The campus had no authority to grant degrees, but enrolled over 100 students in degree programs, representing that it had authority to grant degrees. Plaintiffs complain that Defendants thereby violated the Illinois Consumer Fraud Act ("ICFA"), engaged in common law fraud and negligent misrepresentation, and violated RICO.

## JURISDICTION AND VENUE

2.       The Court has jurisdiction under 28 U.S.C. §1332(a) (general diversity); 28 U.S.C. §1332(d) (Class Action Fairness Act), 28 U.S.C. §1331 (general federal question), 18 U.S.C. §1964 (RICO) and 28 U.S.C. §1367 (supplemental jurisdiction).

3.       Venue is proper because all claims arise out of the operation of a school in Illinois.

4.      Personal jurisdiction is proper for the same reason.

## PARTIES

### Plaintiffs

5.      Plaintiff Soo is a citizen of South Korea, residing in Illinois. She is a medical doctor licensed in the Republic of Korea (South Korea). She has a B.S. in chemical engineering and a 2019 M.D. degree, from Korea.  She has sought positions in healthcare administration and information technology in the United States while studying to take medical licensing examinations in the United States.

6.      Plaintiff Sana Hamid Ali is a citizen of India, residing in Illinois.  She is a dentist licensed in India.  She was studying to take licensing examinations in the United States.

### Defendants

7.      Defendant University of the Potomac at Chicago, LLC, doing business as University of the Potomac, was a limited liability company organized under Illinois law with its principal address at 1401 H Street NW, Suite 100, Washington, DC 20005. Its existence was terminated August 11, 2023.  On information and belief, none of its members was a citizen of Illinois.

8.      Defendant Potomac College, LLC, doing business as University of the Potomac, is a limited liability company organized under Delaware law with offices at 1401 H Street NW, Suite 100, Washington, DC 20005, and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043.  It also uses the address of 301 Congress Avenue, 22nd Floor, Austin, TX, 78701.  Its registered agent and office is National Registered Agents Inc., 1015 15th St. NW, Suite 1000, Washington, DC 20005 or National Registered Agents, Inc., 4701 Cox Road, Suite 285, Glen Allen, VA, 23060. On information and belief, none of its members was a citizen of Illinois.

9.      University of the Potomac is a private, for-profit school and operated as such from about 1991 to the present.

10.      The Chicago campus had 100 to 367 students at any one time.

2

11.     Defendant Linden East, LLC, is a limited liability company organized under Delaware law.  It uses the address 301 Congress Avenue, 22d floor, Austin, TX 78701-2961.  Its registered agent and office is The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

12.     On information and belief, none of its members was a citizen of Illinois.

13.     Linden East, LLC is the 100% equity owner of Potomac College, LLC and was the 100% equity owner of University of the Potomac at Chicago, LLC.

14.     Prior to June 25, 2020, the Chicago campus of University of the Potomac was owned by a now-dissolved company, Business Industrial Resources ("BIR"), which was owned by Linden East, LLC.  Linden East, LLC, operated the campus.

15.     On June 25, 2020, Potomac College, LLC d/b/a University of the Potomac acquired all of the assets of BIR from Linden East, LLC.

16.     At all relevant times prior to August 11, 2023, Defendants University of the Potomac at Chicago, LLC, Potomac College, LLC, and Linden East, LLC, all did business as "University of the Potomac," without distinction between the entities involved in the various campuses.

17.     For example, as set forth below, Defendant Andrea Ford, nominally an executive of Potomac College, LLC, dealt with the Illinois Board of Higher Education ("IBHE") relating to degree-granting authority of the Chicago campus.

18.     "University of the Potomac" had three campuses: 828 S. Wabash Avenue, 2nd Floor, Chicago, IL 60605; 1401 H Street NW, Suite 100, Washington, DC 20005; and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043.  There were also operations at 3601 West Devon, Chicago, Illinois.

19.     Defendants Rosanna DePinto, also known as Rosanna Mastrantuono, and Arthur L. Smith Jr., also known as Lee Smith, ran the Chicago campus.  DePinto used the title "campus director," and functioned as such.

20.     On information and belief, Defendant DePinto was employed by Linden East, LLC and ordered by that entity to manage the Chicago campus.

21.     Defendant Rosanna DePinto may be found at 5 Meadowlark Ct., Roselle, IL 60172-4729 or 27 S. Howard Ave., #A, Roselle, IL 60172.

22.     Defendant Arthur L. Smith, Jr., also known as Lee Smith, was the Provost of the University of the Potomac.  He also used the title "Dean of Academics at Chicago Campus" and functioned as such.  He may be found at 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043.

23.     Defendant Andrea Ford was Chief Executive Officer of University of the Potomac from November 2021 to present and Chief Operating Officer from August 2015 to October 2022. On information and belief, she resides at 11 Aster Lane, Stafford, VA 22554.

## FACTS – GENERAL

24.     Throughout the period from 2019 to 2023, the Illinois Board of Higher Education ("IBHE") authorized the Chicago campus of University of the Potomac to offer only non-degree programs of study.  (Exhibit A) "[T]he University of the Potomac was not provided authority to grant degrees."  (Exhibit B)

25.     On August 14, 2019, IBHE informed University of the Potomac that it had not properly applied for authority to grant degrees.  (Exhibit C)

26.     On September 21, 2020, the IBHE informed Andrea Ford that "University of Potomac does not have approval to operate as a degree granting institution."  (Exhibit D)

27.     On February 10, 2022, U.S. Immigration and Customs Enforcement warned the University of the Potomac that it was operating unapproved locations in Chicago.  (Exhibit E).

28.     Andrea Ford was responsible for most or all of the interaction between IBHE and the University of the Potomac.

29.     Defendants DePinto, Smith and Ford were each aware of the Chicago campus' lack of authority to grant degrees.

4

30.    Notwithstanding the lack of authority to grant degrees, University of the Potomac repeatedly represented to students and prospective students that it could grant degrees and enrolled students in degree-granting programs.  Defendants DePinto, Ford and Smith each authorized, approved, participated in and directed such conduct.

31.    Representations that the Chicago campus was authorized to grant degrees included the following:

a.    The Chicago campus enrolled Plaintiffs and other students in degree programs and accepted tuition and other payments for such programs – acts which are representations that the Chicago campus is authorized to grant degrees.  The Chicago campus had 100-367 students in degree programs at any one time.  Plaintiffs and any other students who enrolled in a degree program at the Chicago campus relied on the ability of the Chicago campus to grant degrees.

b.    The Chicago campus represented that it offered degree-granting programs in emails of May 10, 2019, May 13, 2019, and June 4, 2019 (Exhibit F), among many others. Defendant DePinto sent one of these emails.  The emails in Exhibit F were sent to most or all of the students at the Chicago campus on the dates they were sent, as well as to other interested persons.  Both Plaintiffs received and read these emails.

c.    In about August 2019, Defendant DePinto personally visited each ESL classroom and asked all students to meet in the break room for an announcement. Several dozen students gathered at this impromptu meeting, including Plaintiff Soo. Defendant DePinto announced that the Chicago campus would be operating as University of the Potomac as of September 2019, and would be offering degree programs. Students asked about the necessary U.S. Immigration and Customs Enforcement paperwork, specifically the form I-20, and were told that the students would be covered.

d.     During September and October 2020, University of the Potomac held virtual roundtable discussions with students, which Plaintiffs participated in.  One such roundtable was held on October 1, 2020, in which Plaintiffs participated.  The email announcing the date and time for the October 1 roundtable stated, "This will be a great opportunity for you to ask questions related to your academic degree programs, courses. . ." (Exhibit G) Defendants Smith, Ford, and DePinto were present on behalf of the University of the Potomac, as was at least one other employee, whose first name is "Sergei." The University of the Potomac representatives referred to the degree programs at the Chicago campus.  No mention was made of the lack of IBHE approval. Students expressed concern about the U.S. Immigration and Customs Enforcement form I-20 and were told the University of the Potomac was still authorized to issue the I-20.

e.     University of the Potomac's Chicago campus had its own Facebook page.  During 2019-2021 the word "degree" or hashtags containing "degree" appeared on it on multiple occasions:

i.     "Are you interested in returning to school to complete your degree or starting a new degree?"

ii.    University of the Potomac Chicago April 26, 2021:  #degreeprogram;

iii.   University of the Potomac Chicago   March 2, 2021:  #onlinedegree #mba . . . #bachelors #masters . . . #accreditation . . .

iv.    University of the Potomac Chicago   December 14, 2020: . . . #bachelorsdegree #mastersdegree #associatesdegree . . .

v.     University of the Potomac Chicago    November 30, 2020: . . . #onlinedegrees #mbalife . . .

6

      vi.    University of the Potomac Chicago    September 22, 2020    UOTP's Chicago Learning Center is currently enrolling for our ESL (English as Second Language) program. Learn to become fluent in English from the best! Classes are forming now. Visit us at:   https://potomac.edu/degree.../certificates/esl-chicago/

      vii.   University of the Potomac Chicago   July 4, 2020 . . .  #bachelorsdegree #masters . . .

      viii.  University of the Potomac Chicago   June 29, 2020 . . .  #onlinedegrees. (Exhibit H)

32.     The purpose and effect of these acts and statements was to convince Plaintiffs and other students that the Chicago campus could issue degrees.

33.     While Defendants were making the misrepresentations outlined above, they knew with certainty that the Chicago campus was not authorized to grant degrees, as evidenced by the following:

    a.    On August 14, 2019, University of the Potomac Chicago was explicitly made aware, in a letter from IBHE, that its application to operate as a degree-granting institution was incomplete and had not been approved. (Exhibit C)

    b.    On August 21, 2019, the U.S. Immigration and Customs Enforcement Student and Exchange Visitor Program sent a Request for Evidence to University of the Potomac, raising questions about the attendance of students who University of the Potomac reported as full-time attendees at the Washington, D.C. location, but whose addresses were in Illinois. The university's response was, "University of the Potomac has students who are enrolled in our programs who live long distance. [sic]" (Exhibit E, pp. 2-3)

7

34.     The authority of the Chicago campus to issue degrees was particularly material to foreign students such as Plaintiffs, in that attending a degree-granting institution that complies with the regulatory requirements of the state where the campus is located (those of IBHE) was necessary to maintain their visa status.

35.     The Chicago campus sought out such foreign students.

### FACTS RELATING TO PLAINTIFF SOO

36.     Following DePinto's in-person announcement that the Chicago campus would begin offering degree programs in the fall 2019 term, and in reliance on the representations that it was entitled to offer degree-granting programs, Plaintiff Soo enrolled at the Chicago campus for a master's in healthcare administration degree from September 2019 to April 2022, when she graduated with the purported degree.  Previously, she had been enrolled at the Chicago campus in an English as a Second Language class.

37.     Plaintiff Soo paid $35,000 tuition for the program and spent nearly three years in the program.

38.     Plaintiff Soo paid tuition using credit cards. Payments were transmitted electronically from the bank to the University of the Potomac.  Statements showing the payments were sent by mail or electronic transmission by the University of the Potomac to Plaintiff Soo.

39.     The sums paid by Plaintiff Soo are typical of Defendants' tuition charges.

40.     As a result of Defendants' deception, Plaintiff Soo suffered lost time and income.

41.     In April and May 2022, Plaintiff Soo requested an enrollment letter specifying the location of the Chicago campus in order to show that she was qualified for employment.  (Exhibit I)

42.     After making inquiries about Defendants' qualification to issue degrees, Plaintiff Soo discovered, in 2023, that the Chicago campus was not authorized to offer degree-granting programs.

### FACTS RELATING TO PLAINTIFF SANA HAMID ALI

43.     On May 10, 2019, Plaintiff Sana Hamid Ali received an email announcing that the University of the Potomac had been working through the approval process with the "State of Illinois Department of Higher Education" and stating, "You can find a list of all of our degree programs that we offer on our website, www.potomac.edu." (Exhibit J)

44.     Ms. Ali replied to the email on the same day, stating her interest in a graduate program and asking for help with enrollment. (Exhibit K)

45.     In reliance on the representations that it was entitled to offer degree-granting programs, Ms. Ali enrolled at the Chicago campus for a master's in healthcare administration degree. Because she was pregnant at the time she enrolled, she began her courses in January 2020.

46.     From January 2020, through at least March 2022, Ms. Ali received periodic updated U.S. Immigration and Customs Enforcement forms, specifically the I-20. Each time the form was issued, it stated that Ms. Ali was enrolled in a master's program and listed the school address as 1401 H Street NW, Suite 100, Washington, DC 20005. (Exhibit L)

47.     On April 12, 2022, University of the Potomac issued a Curriculum Practical Work authorization for Ms. Ali, which stated that she was a student in the Master of Science in Health Administration program and listed the school address as 1401 H Street NW, Suite 100, Washington, DC 20005. (Exhibit M)

48.     In April 2022, Ms. Ali requested enrollment-related documents. The issuance of such documents is prohibited without IBHE authority.

49.     Instead of issuing the requested documents, DePinto, the Chicago campus director, without the knowledge or consent of Ms. Ali, transferred her enrollment to the University of the Cumberlands and provided Ms. Ali with enrollment documents issued by the University of the Cumberlands.

50.     Ms. Ali eventually learned that this had been done, and that it was done because the Chicago campus was not authorized to issue degrees or the enrollment document for international students.

51.     Ms. Ali also paid tuition for the program and spent nearly three years in the program.

52.     As a result of Defendants' deception, Plaintiff Ali suffered lost time and income.

## CLASS ALLEGATIONS

53.     Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

54.     Plaintiffs request that this Court certify a class of all persons who were enrolled in a purported degree-granting program at the Chicago campus of the University of the Potomac.

55.     The potential number of class members exceeds 100, and the class is so numerous that joinder would be impracticable.

56.     There are questions of fact and law which are common to all members of the class, which common questions predominate over any questions affecting individual members of the class.

57.     All members of the class have been subject to and affected by a uniform course of conduct, consisting of the misrepresentation and failure to disclose the degree-granting status of the Chicago campus.

58.     The common questions of law and fact include, but are not limited to:

a.     Whether Defendants misrepresented to students that the Chicago campus was a degree-granting institution;

b.     Whether enrolling students in a degree-granting program is a representation that the enrolling institution has authority to grant degrees;

c.     Whether Defendants intended that students rely upon the concealment, suppression, or omission of the material fact that the Chicago campus was not authorized to grant degrees;

d.      Whether Defendants' misrepresentations and omissions regarding accreditation constitute a deceptive act or practice under the ICFA;

e.      Whether Defendants' conduct is unfair under the ICFA such that it offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers;

f.      Whether Defendants' misrepresentations and omissions regarding accreditation constitute fraudulent concealment;

g.      Whether Defendants owe a duty to students to refrain from providing false and misleading information, even through negligence;

h.      Whether the individual Defendants violated RICO.

59.      Plaintiffs' claims are typical of the claims of the class members.  Plaintiffs and class members' claims are based on the same legal and factual theories.

60.      Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of, the putative class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other putative class members, who each have the same claims. Plaintiffs are members of the putative class and their interests coincide with, and are not antagonistic to, those of the other putative class members.

61.      Plaintiffs are represented by counsel who are experienced in litigating complex consumer protection cases and class action matters in both state and federal courts and who have extensive knowledge on issues of higher education law, consumer protection, and student debt.

62.      A class action is superior for the fair and efficient adjudication of this matter, in that:

a.      Defendants have acted in the same unlawful manner with respect to all class members;.

b.      A legal ruling concerning the unlawfulness of Defendants' representations and omissions would vindicate the rights of every class member; and

c.      Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense as well as prevent possible inconsistent results. Litigating individual lawsuits in the present case would be a waste of judicial resources and addressing the common issues in one action would aid judicial administration.

## **COUNT I – ICFA – MISREPRESENTATION**

63.     Plaintiffs incorporate the allegations in paragraphs 1-58.

64.     This claim is against all Defendants.

65.     The ICFA makes it unlawful to employ:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

66.     As set forth above, Defendants engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under 815 ILCS 505/2.

67.     These deceptive acts or practices include, but are not limited to, misrepresentations to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

68.     The act of enrolling students in a degree program is a representation that the enrolling institution, here the Chicago campus of the University of the Potomac, had authority to grant degrees.

69.     As set forth above, other misrepresentations were contained in widely distributed materials received and reviewed by Plaintiffs and the class, including the emails in Exhibit F and the Facebook material described above and in Exhibit H.

70.     Each of the Defendants intended for Plaintiffs and the class to rely upon these misrepresentations.

71.     Defendant DePinto personally made such representations (Exhibit F).

72.     Defendants DePinto, Smith and Ford directed and authorized the making of such representations.

73.     Defendants' violations took place repeatedly and were designed to mislead and deceive students regarding material facts about the University of the Potomac, namely its ability to grant degrees.

74.     Plaintiffs and the class members did rely upon Defendants' representations that the Chicago campus was authorized to grant degrees, by enrolling in degree programs at the Chicago campus.

75.     As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm, including costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

76.     Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i.      Compensatory damages;

ii.     Punitive damages;

iii.    Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

iv.     Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II – ICFA – OMISSIONS OF MATERIAL FACT

77.     Plaintiffs incorporate the allegations in paragraphs 1-58.

13

78.     This claim is against all Defendants.

79.     The ICFA makes it unlawful to employ:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2.

80.     As set forth above, Defendants have engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under ICFA §2, 815 ILCS 505/2.

81.     The deceptive acts or practices include, but are not limited to, the failure to disclose to Plaintiffs and the class that University of the Potomac was not authorized to grant degrees at the Chicago campus.

82.     The omissions were in widely distributed materials received and reviewed by Plaintiffs and the class, including the emails in Exhibit F and the Facebook material described above and in Exhibit H.

83.     In addition, the act of enrolling students in a degree program is a communication that the Chicago campus of the University of the Potomac had authority to grant degrees.

84.     Each of the Defendants intended for Plaintiffs and the class to rely upon these omissions.

85.     Defendant DePinto made the communications containing the omissions.

86.     Defendants Smith and Ford directed and authorized the making of such communications.

87.     Defendants' violations took place repeatedly and were designed to conceal, suppress, and omit the University of the Potomac's lack of authority to grant degrees from Plaintiffs and the class.

88.     Plaintiffs and the class members did rely upon Defendants' failure to disclose that the Chicago campus was not authorized to grant degrees, when they enrolled in degree programs at the Chicago campus and paid large sums for tuition and expenses.

89.     As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of tuition, debt incurred in order to attend University of the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

90.     Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

i.     Compensatory damages;

ii.    Punitive damages;

iii.   Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

iv.    Granting all such further and other relief as the Court deems just and appropriate.

### COUNT III – ICFA – UNFAIRNESS

91.     Plaintiffs incorporate the allegations in paragraphs 1-58.

92.     This claim is against all Defendants.

93.     To determine whether conduct is unfair, Illinois courts consider whether the practice offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to customers.

94.     A practice offends public policy when it violates a standard of conduct contained in an existing statute, regulation, or common law doctrine that typically applies to such a situation.

95.     The Illinois Administrative Code requires that degree-granting educational institutions satisfy the IBHE that they provide the educational benefits associated with the degrees granted.  23 Ill. Admin. Code § 1030.60(a) provides:

(a) Criteria for New Certificate and Degree Programs
The Board requires that a non-public or out-of-state public institution demonstrate that it can maintain and operate a new degree program that meets the standard criteria for those degree programs. The following standard criteria are designed to measure the appropriateness of the stated educational objectives to the certificate or degree programs of a given institution and the extent to which suitable and proper processes have been developed for meeting those objectives:

1) All rules, criteria, and procedures defined in Section 1030.30 shall apply.

2) The objectives of the certificate or degree program must be consistent with what the degree program title implies.

3) The requested certificate or degree program shall be congruent with the purpose, goals, objectives and mission of the institution.

4) The caliber and content of the curriculum shall assure that the stated certificate or degree objectives for which the program is offered will be achieved.

5) The institution shall have adequate and suitable space, equipment and instructional materials to support institutional programs.

6) The education, experience and other qualifications of directors, administrators, supervisors and instructors shall ensure that the students will receive education consistent with the objectives of the program. . . .

8) Fiscal and personnel resources shall be sufficient to permit the institution to meet obligations to continuing programs while assuming additional resource responsibilities for the new certificate or degree program.

9) The faculty, staff and instructors of the institution shall be of good professional reputation and character.

96.     23 Ill. Admin. Code § 1030.60(b) requires that the IBHE "shall approve all new certificate and degree programs in institutions described in Section 1030.10(b) that are not otherwise exempted in Section 1030.10(c)."

97.     The University of the Potomac Chicago campus was an institution described in §1030.10(b) that was not otherwise exempted in §1030.10(c).  Section 1030.10 requires any private

16

or public person, group of persons, partnership or corporation that is or contemplates offering degrees or credit bearing instruction in Illinois above the high school level to obtain authorization from the IBHE.

98.     The Illinois Administrative Code also contains a public policy against false, erroneous, or misleading statements to students and the public regarding, among other things, "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." 23 Ill. Adm. Code §1030.60(a)(7) provides:

> The information the institution provides for students and the public shall accurately describe the programs offered, program objectives, length of program, schedule of tuition, fees, and all other charges and expenses necessary for completion of the course of study, cancellation and refund policies, and such other material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll. This information, including any enrollment agreements or similar agreements, shall be available to prospective students prior to enrollment.

99.     Defendants violated these public policies by:

    a.   Enrolling students in degree programs that had not been approved by the IBHE and did not meet IBHE requirements;

    b.   Misrepresenting and omitting the nature and extent of University of the Potomac's institutional accreditation.

100.    Defendants' conduct offends public policy and is unfair under the ICFA.

101.    Defendants' conduct was also immoral, unethical, and oppressive under the ICFA, in that Defendants collected substantial amounts of money for unapproved and deficient programs.

102.    Defendants' conduct caused substantial injury to large numbers of consumers.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

    i.   Compensatory damages;

    ii.  Punitive damages;

  iii. Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

  iv. Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV – NEGLIGENT MISREPRESENTATION

103. Plaintiffs incorporate the allegations in paragraphs 1-58.

104. This claim is against Defendants University of the Potomac at Chicago LLC, Potomac College, LLC and Linden East, LLC.

105. Defendants, as the providers of educational services, represented that the Chicago campus of the University of the Potomac was authorized to grant degrees, when it was not.

106. At the time of these representations, Defendants knew or should have known that they were false.

107. Defendants owed Plaintiffs and the class a duty to refrain from providing false and misleading information.

108. Defendants were required to disclose "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." 23 Ill. Adm. Code §1030.60(a)(7).

109. Defendants breached that duty by misrepresenting and omitting material facts about University of the Potomac's authority to grant degrees to students attending the Chicago campus.

110. These misrepresentations, upon which Plaintiffs and class members reasonably and justifiably relied, were intended to, and actually did, induce Plaintiffs and the class to remain enrolled at University of the Potomac.

111. Defendant's negligent misrepresentation caused damage to Plaintiffs and the class, who are entitled to damages and other legal and equitable relief.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

    i.   Compensatory damages;

    ii.   Punitive damages;

    iii.   Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

    iv.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT V – FRAUDULENT CONCEALMENT

112.    Plaintiffs incorporate the allegations in paragraphs 1-58.

113.    This claim is against Defendants University of the Potomac at Chicago LLC, Potomac College, LLC and Linden East, LLC.

114.    Defendants concealed from Plaintiffs and the class that the University of the Potomac Chicago campus was not authorized to grant degrees.

115.    This information was material to students in deciding whether to enroll and remain enrolled at University of the Potomac.

116.    Whether degrees are authorized is highly material to students' decision to enroll and remain enrolled in an institution of higher education.

117.    Defendants had a duty to inform Plaintiffs and the class about University of the Potomac's lack of degree granting authority, as well as a duty to not make false or misleading statements concerning the nature and extent of University of the Potomac's degree-granting authority.

118.    The Illinois Administrative Code required Defendants to "accurately describe" all "material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll."  23 Ill. Adm. Code § 1030.60(a)(7).

119.    Defendants could have, but did not, publicly disclose the truth about University of the Potomac's degree-granting authority.

120.     Due to Defendants' fraudulent concealment, as well as Defendants' affirmative representations, Plaintiffs and the class had no reason to seek out alternative sources of information regarding University of the Potomac's degree-granting authority status.

121.     Plaintiffs and the class members did rely upon Defendants' concealment of the fact that the Chicago campus was not authorized to grant degrees, by enrolling in degree programs at the Chicago campus and paying large sums for tuition and expenses.

122.     As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of tuition, debt incurred in order to attend University of the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

    i.   Compensatory damages;

    ii.   Punitive damages;

    iii.   Reasonable attorneys' fees, litigation expenses and costs under the ICFA; and

    iv.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VI – RICO

123.     Plaintiffs incorporate the allegations in paragraphs 1-58.

124.     This claim is against Defendants Rosanna DePinto, Arthur L. Smith Jr., also known as Lee Smith; and Andrea Ford, who are the RICO persons.

125.     The University of the Potomac, which consisted of multiple legal entities, was the RICO "enterprise."

126.    The enterprise affected interstate and foreign commerce, in that it had locations in three states and specifically sought to enroll foreign students.

127.    DePinto and Smith operated the Chicago campus and were employees of one or more of the entities comprising University of the Potomac.

128.    Ford was a principal executive of and was employed by Potomac College, LLC, one of the entities comprising University of the Potomac.

129.    DePinto, Smith and Ford conducted the affairs of the University of Potomac through a pattern of mail and wire fraud, in violation of 18 U.S.C. §1962(c).  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).

130.    The fraudulent conduct included:

a.      The enrolling of students in a degree program, which is a representation that the enrolling institution, here the Chicago campus of the University of the Potomac, had authority to grant degrees;

b.      Misrepresentations to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

c.      Failure to disclose the lack of degree granting authority;

d.      The emails in Exhibit F;

e.      The Facebook material described above and in Exhibit H.

131.    Plaintiffs and the class members did rely upon Defendants' scheme, by enrolling in degree programs at the Chicago campus and paying large sums for tuition and expenses.

132.    18 U.S.C. § 1341 provides:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which

it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

133.    18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

134.    The conduct complained of lasted from 2019 or earlier through 2023 and affected at least 100 victims.

135.    Use of interstate wires in furtherance of the scheme included:

a.  The sending of emails that represented that the Chicago campus was authorized to grant degrees;

b.  The receipt of tuition payments from Plaintiffs and other students.

136.    Use of the mails in furtherance of the scheme included receipt of tuition payments from Plaintiffs and other students.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class and against Defendants for:

i.   Treble damages;

ii.  Reasonable attorney's fees, litigation expenses and costs;

iii. Such other relief as the Court deems just and appropriate.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC** 20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200

(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

### JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)