**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SUSAN SOO J KO and<br>SANA HAMID ALI,<br>on behalf of Plaintiffs and<br>the class members described<br>herein,<br><br>        Plaintiffs,<br><br>        vs.<br><br>UNIVERSITY OF THE POTOMAC<br>AT CHICAGO LLC,  and<br>POTOMAC COLLEGE, LLC,<br>both doing business as<br>University of the Potomac;<br>LINDEN EAST, LLC;<br>ROSANNA DEPINTO,<br>also known as ROSANNA<br>MASTRANTUONO;<br>ARTHUR L. SMITH JR.,<br>also known as LEE SMITH;<br>and ANDREA FORD;<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    1:24cv1455<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### *CORRECTED* SECOND AMENDED COMPLAINT – CLASS ACTION[1]

1.      Plaintiffs bring this action to secure redress for misrepresentations concerning the degree-granting authority of the former Chicago campus of the University of the Potomac, a for-profit school catering to foreign students.  The campus had no authority to grant degrees, but enrolled over 100 students in degree programs, representing that it had authority to grant degrees. Plaintiffs complain that Defendants thereby violated the Illinois Consumer Fraud Act ("ICFA"), engaged in common law fraud,  and violated RICO.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction under 28 U.S.C. §1332(a) (general diversity); 28 U.S.C.

---

[1] Plaintiff filed Second Amended Complaint - Class Action, August 28, 2024 but failed to include redlined complaint as an attachment. Plaintiff is filing this Corrected Second Amended Complaint with the redlined complaint as an attachment.

§1332(d) (Class Action Fairness Act), 28 U.S.C. §1331 (general federal question), 18 U.S.C. §1964 (RICO) and 28 U.S.C. §1367 (supplemental jurisdiction).

3.      Venue is proper because all claims arise out of the operation of a school in Illinois.

4.      Personal jurisdiction is proper for the same reason.

## PARTIES

### Plaintiffs

5.      Plaintiff Soo is a citizen of South Korea, residing in Illinois. She is a medical doctor licensed in the Republic of Korea (South Korea). She has a B.S. in chemical engineering and a 2019 M.D. degree, from Korea. She has sought positions in healthcare administration and information technology in the United States while studying to take medical licensing examinations in the United States.

6.      Plaintiff Sana Hamid Ali is a citizen of India, residing in Illinois. She is a dentist licensed in India. She was studying to take licensing examinations in the United States.

### Entity Defendants

7.      Defendant University of the Potomac at Chicago, LLC, doing business as University of the Potomac, was a limited liability company organized under Illinois law with its principal address at 1401 H Street NW, Suite 100, Washington, DC 20005. Its existence was terminated August 11, 2023. On information and belief, none of its members was a citizen of Illinois.

8.      Defendant Potomac College, LLC, doing business as University of the Potomac, is a limited liability company organized under Delaware law with offices at 1401 H Street NW, Suite 100, Washington, DC 20005, and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043. It also uses the address of 301 Congress Avenue, 22nd Floor, Austin, TX, 78701. Its registered agent and office is National Registered Agents Inc., 1015 15th St. NW, Suite 1000, Washington, DC 20005 or National Registered Agents, Inc., 4701 Cox Road, Suite 285, Glen Allen, VA, 23060. On information and belief, none of its members was a citizen of Illinois.

9.      Defendant Potomac College, LLC, doing business as University of the Potomac, is a

2

private, for-profit school. It was established in 1991 and has operated as such until the present.

10.     Defendant Linden East, LLC, is a limited liability company organized under Delaware law. It uses the address 301 Congress Avenue, 22d floor, Austin, TX 78701-2961. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

11.     On information and belief, none of its members was a citizen of Illinois.

12.     Linden East, LLC is the 100% equity owner of Potomac College, LLC and was the 100% equity owner of University of the Potomac at Chicago, LLC.

13.     Prior to May 23, 2018, what became the Chicago campus of University of the Potomac was owned by a now-dissolved company, Business Industrial Resources ("BIR").

14.     On May 23, 2018, BIR sold most or all of the assets relating to the Chicago campus to Linden East, LLC. (Exhibit 1)

15.     Linden East, LLC created University of the Potomac at Chicago LLC to hold the assets. Its principal address was the same as that of Potomac College, LLC, d/b/a University of the Potomac, which was also its sole manager.

16.     In fact, Linden East, LLC directed Defendant Potomac College, LLC, d/b/a University of the Potomac, to actually operate the Chicago campus and deal with the students attending the Chicago campus, as described below. Defendant Potomac College, LLC, d/b/a University of the Potomac described this on its financial statements as "provid[ing] administrative support" and "provid[ing] educational services" to students at the Chicago campus. The functions performed by Potomac College, LLC, d/b/a University of the Potomac included all the operating functions of the Chicago campus. This was done with the consent of University of the Potomac at Chicago LLC and Linden East, LLC.

17.     Student handbooks and information provided to the public simply treated the Chicago campus operations as part of "University of the Potomac," without reference to University of the Potomac at Chicago LLC. (Exhibit 2)

18.     Catalogs and other materials provided to students simply stated that "University of the Potomac" had three campuses: 828 S. Wabash Avenue, 2nd Floor, Chicago, IL 60605; 1401 H Street NW, Suite 100, Washington, DC 20005; and 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043.  Briefly, there were also operations at 3601 West Devon, Chicago, Illinois, a former BIR location.

19.     Executives of  Defendant Potomac College, LLC, doing business as University of the Potomac also referred to the University having three locations.

20.     The Chicago campus had 100 to 367 students at any one time.

21.     At all relevant times, Defendant Potomac College, LLC, doing business as University of the Potomac, held the registration for the web address www.potomac.edu.  This web address was used to send many of the communications described below.  It also appears as the payee address for tuition and fee payments made by credit or debit card.

22.     On or about June 25, 2020 or June 25, 2021 (documents give both dates), all assets of University of the Potomac Chicago, LLC were transferred to Potomac College, LLC, doing business as University of the Potomac.  Debts relating to the Chicago campus  were treated as a cost of acquiring the Chicago campus.

**Individual Defendants**

23.     Defendants Rosanna DePinto, also known as Rosanna Mastrantuono, and Arthur L. Smith Jr., also known as Lee Smith, ran the Chicago campus.

24.     DePinto used the title "campus director" (e.g., Exhibit 3, email of June 4, 2019),  and functioned as such.  She was authorized to use that title by Potomac College, LLC d/b/a University of the Potomac.  She oversaw the daily operations at the Chicago campus.

25.     Defendant DePinto was actually employed by Linden East, LLC and ordered by that entity to manage the Chicago campus.

26.     All of the acts attributed to Defendant DePinto herein were within the scope of her employment by Linden East, LLC, which is liable for them.

4

27.     Defendant Rosanna DePinto may be found at 5 Meadowlark Ct., Roselle, IL 60172-4729 or 27 S. Howard Ave., #A, Roselle, IL 60172.

28.     Defendant Arthur L. Smith, Jr., also known as Lee Smith, was the Provost of Potomac College, LLC d/b/a University of the Potomac.  He also used the title "Dean of Academics at Chicago Campus" and functioned as such.  He may be found at 7799 Leesburg Pike, Suite 200, Falls Church, VA 22043. All of the acts attributed to Defendant Smith herein were within the scope of his employment by Potomac College, LLC d/b/a University of the Potomac, which is liable for them.

29.     Defendant Andrea Ford was an executive of  Potomac College, LLC d/b/a University of the Potomac from August 2015 to the present.  Her initial position with Potomac College, LLC d/b/a University of the Potomac was as Director of Compliance.  In April 2017,  she became Chief Operating Officer.  In November 2021, she became Chief Executive Officer.   On information and belief, she resides at 11 Aster Lane, Stafford, VA  22554.  She is sometimes referred to as Andrea Kemp or Andrea Kemp-Curtis.

30.     Defendant Andrea Ford oversaw the operations at the Chicago location.  This included regulatory matters, information technology, and day to day operations.  All of the acts attributed to Defendant Ford herein were within the scope of her employment by Potomac College, LLC d/b/a University of the Potomac, which is liable for them.

31.     Defendant DePinto reported to Defendant Ford.

## FACTS – GENERAL

32.     The Illinois Board of Higher Education  ("IBHE") must approve any degree programs of study by an educational institution located in Illinois.

33.     About February 11, 2019, Potomac College, LLC d/b/a University of the Potomac applied to IBHE for degree granting authority.

34.      The application was filed by Potomac College, LLC, d/b/a University of the Potomac.   Defendant Ford signed it.

5

35.     The application was never approved.  IBHE repeatedly found substantial problems with both the application and the qualification of Potomac College, LLC, d/b/a University of the Potomac to operate in Illinois.   (Exhibit 4 [notice of April 11, 2019], Exhibit 5 [notice of June 21, 2019], Exhibit 6 [notice of August 14, 2019] and Exhibit 7 [recommended denial of December 10, 2019])

36.     The problems included such fundamental issues as lack of positive cash flow and excessive default on student loans.  (Exhibits 5, 7)

37.     The problems found by IBHE  would have been known to senior management, including the individual Defendants herein, because numerous items of information would have come from the campus manager (DePinto), academic dean (Smith) and COO/ CEO (Ford).

38.     No one could have believed that the problems were remediable.  The application was recommended to be denied on December 10, 2019 (Exhibit 7) and eventually withdrawn in March 2022.  (Exhibit 8)

39.     Under Illinois law, "An institution may state that it is approved or authorized to award a certificate or degree in the State of Illinois only after that approval has been officially granted and received in writing from the [Illinois Board of Higher Education]." (23 Ill.Admin.Code §1030.60(b)(12)(A))

40.     Although it never had such authority, Potomac College LLC d/b/a University of the Potomac and the individual Defendants repeatedly made such statements, as set forth below. Potomac College LLC d/b/a University of the Potomac and the individual Defendants had no reason to believe that such authority had been granted.

41.     Furthermore, "No institution shall publish or otherwise communicate to prospective students, faculty, staff or the public misleading or erroneous information about the certificate- or degree-granting status of a given institution."  (23 Ill.Admin. Code §1030.60(b)(12)(C))

42.     All statements referring to "degrees" or "undergraduates" or "graduates" by

6

Potomac College, LLC d/b/a University of the Potomac, of which there were a large number, violated this prohibition.

43.    Throughout the period 2019 to 2023, the IBHE authorized the Chicago campus of University of the Potomac to offer only non-degree programs of study.  (Exhibit 9) "[T]he University of the Potomac was not provided authority to grant degrees."  (Exhibit 10)

44.    On September 21, 2020, IBHE informed Andrea Ford that "University of Potomac does not have approval to operate as a degree granting institution."  (Exhibit 11)

45.    On February 10, 2022, U.S. Immigration and Customs Enforcement warned the University of the Potomac that it was operating unapproved locations in Chicago.  (Exhibit 12). This document listed problems with approval going back to 2018.

46.    Andrea Ford was responsible for most or all of the interaction between IBHE and Potomac College d/b/a University of the Potomac relating to degree-granting authority of the Chicago campus.   DePinto was also involved, meeting with IBHE officials on January 29, 2020 and possibly other occasions.

47.    Notwithstanding the lack of degree-granting authority and Defendant Andrea Ford's knowledge of such, she, as Chief Executive Officer and Chief Operating Officer, authorized the Chicago campus of University of the Potomac to offer degree programs and collect money for such programs.

48.    Defendants DePinto and Smith were also each aware of the Chicago campus' lack of authority to grant degrees at all times between 2019 and 2023.

49.    Notwithstanding the lack of authority to grant degrees, University of the Potomac maintained degree-granting programs at the Chicago campus, collected money for such degree programs,  and repeatedly represented to students and prospective students that the Chicago campus could grant degrees and enrolled students in degree-granting programs.

50.     Defendants DePinto, Ford and Smith each authorized, approved, participated in and directed such conduct.

51.     Representations to students and prospective students that the Chicago campus was authorized to grant degrees included the following:

a.      The Chicago campus enrolled Plaintiffs and other students in degree programs and accepted tuition and other payments for such programs – acts which are representations that the Chicago campus is authorized to grant degrees.   Plaintiffs and any other students who enrolled in a degree program at the Chicago campus relied on the ability of the Chicago campus to grant degrees.

b.      The payments were deposited by Potomac College, LLC d/b/a University of the Potomac.  In many cases, credit card statements gave the location of the payee as "DC" and provided the web address "Potomac.edu" as contact information.

c.      On April 17, 2019, Lee Smith, on behalf of Potomac College, LLC University of the Potomac, sent an email to all Chicago campus students stating that "We are very excited with our progress to bring academic degree programs to Chicago" and asking students to complete a "Student Academic Program Interest Survey" to determine which degree programs students were interested in.  (Exhibit 13)   Both Plaintiffs received the email.

d.      This statement was false or misleading, in that (a) Defendants were not making significant progress in obtaining permission to conduct degree programs and (b) never received such permission.

e.      Potomac College LLC d/b/a University of the Potomac represented to students  that it offered degree-granting programs in emails of May 10, 2019 (Exhibit 14), May 13, 2019 (Exhibit 15), and June 4, 2019 (Exhibit 3), among many others.  Defendant DePinto sent Exhibit 3.  Exhibits 14-15 and 3 were sent to most or all of the students at the Chicago campus on the dates they

were sent, as well as to other interested persons. Both Plaintiffs received and read these emails.

f.      Exhibit 3 stated that "You have been receiving emails from me regarding our degree programs. I have been speaking to a number of you separately. I understand from those conversations that you may be encountering some difficulties with gathering money for tuition." Exhibit 3 continued by offering a tuition reduction "for both Undergraduate and Graduate students." Defendant Ford authorized these statements and the reduction.

g.     In June 2019 Defendants Lee, DePinto and Ford personally attended and conducted the ESL (English as a Second Language) graduation ceremony at the Chicago campus. Lee, DePinto and Ford asked ESL graduates, "when are you coming to our degree program? The Chicago campus can offer you a special discount if you enroll this month." Lee, DePinto and Ford knew at the time the statement was made that the Chicago campus was not authorized to issue degrees.

h.     On July 22, 2019, Plaintiff Ko signed an "Enrollment Agreement" for a Master of Healthcare Administration degree with Defendant Potomac College, LLC, doing business as University of the Potomac (Exhibit 16). At the time, the Chicago campus was not authorized to issue any degree.

i.     Exhibit 16 is a form document signed by all Chicago campus students enrolled in degree programs. Each document referred to a degree to be granted by the Chicago campus.

j.     In about August 2019, Defendant DePinto personally visited each ESL classroom and asked all students to meet in the break room for an announcement. Several dozen students gathered at this impromptu meeting, including Plaintiff Soo. Defendant DePinto announced that the Chicago

campus would be operating as University of the Potomac as of the next month, September 2019, and would be offering degree programs. Students asked about the necessary U.S. Immigration and Customs Enforcement paperwork, specifically the form I-20, and were told that the students would be covered.

k.    Beginning on or about August 15, 2019, University of the Potomac displayed at the entrance of the Chicago campus a poster which stated, "Programs & Degrees Available" over the words "Bachelor's" and "Master's." The poster has the web address of Potomac College, LLC d/b/a University of the Potomac, a contact number with a 773 area code (Chicago) and the web address Iladmissions@potomac.edu. Exhibit 27 is a picture of Defendant Smith standing next to the poster, which University of the Potomac posted on the Internet. Smith is the third from the left. Anyone entering the Chicago campus, including students and DePinto, would have seen the poster.

l.    On November 1, 2019, Plaintiff Ali received the email in Exhibit 30, describing the Master's degree program at the Chicago campus and inviting enrollment.

m.    On November 19, 2019 all students enrolled in degree programs at the Chicago campus, including Plaintiffs, were sent an email (Exhibit 17) by Potomac College LLC d/b/a University of the Potomac stating that "This is to remind you that all Degree students must submit signed Scholarship letter. . . ."

n.    On January 3 , 2020, Defendant Smith sent an email to a number of persons introducing the proctors (teaching assistants) for the Chicago students in a course, MGMT 360-12, which was part of the curriculum for the degree of

10

Bachelor of Science in Business. (Exhibit 18) The Chicago campus was not authorized to offer such a degree.

o.    On March 24, 2020, Potomac College LLC d/b/a University of the Potomac campus posted on the Internet an advertisement inviting students interested in completing a degree or starting a new one at the Chicago campus to attend a virtual open house on March 26, 2020. (Exhibit 28)

p.    On March 25, 2020, Potomac College LLC d/b/a University of the Potomac posted on the Internet an advertisement stating that students starting courses for a bachelor's degree at the Chicago campus would get a free laptop. (Exhibit 29) DePinto, Smith and Ford were each aware of the advertisement.

q.    During September and October 2020, University of the Potomac held virtual roundtable discussions with students, which both Plaintiffs participated in. One such roundtable was held on October 1, 2020, in which both Plaintiffs participated. The email announcing the date and time for the October 1 roundtable stated, "This will be a great opportunity for you to ask questions related to your academic degree programs, courses. . ." (Exhibit 19)

r.    At the roundtable, Defendants Smith, Ford, and DePinto were present on behalf of the University of the Potomac, as was at least one other person, believed to be Sergei Andronikov. Both DePinto and Smith explained and answered questions about the degree programs at the Chicago campus, but did not mention the lack of IBHE approval. Ford, who was DePinto's immediate superior, authorized the statements made by DePinto and Smith and did not disagree with anything they said. Students expressed concern about the U.S. Immigration and Customs Enforcement form I-20 and were told the University of the Potomac was still authorized to issue the I-20.

11

s.      University of the Potomac had a Facebook page for the Chicago campus. During 2019-2021 the word "degree" or hashtags containing "degree" appeared on it on multiple occasions:

        i.     "Are you interested in returning to school to complete your degree or starting a new degree?"

        ii.    University of the Potomac Chicago April 26, 2021:  #degreeprogram;

        iii.   University of the Potomac Chicago   March 2, 2021:  #onlinedegree #mba . . . #bachelors #masters . . . #accreditation . . .

        iv.   University of the Potomac Chicago   December 14, 2020: . . . #bachelorsdegree #mastersdegree #associatesdegree . . .

        v.    University of the Potomac Chicago    November 30, 2020: . . . #onlinedegrees #mbalife . . .

        vi.   University of the Potomac Chicago    September 22, 2020    UOTP's Chicago Learning Center is currently enrolling for our ESL (English as Second Language) program. Learn to become fluent in English from the best! Classes are forming now. Visit us at: https://potomac.edu/degree.../certificates/esl-chicago/

        vii.  University of the Potomac Chicago   July 4, 2020 . . . #bachelorsdegree #masters . . .

        viii.  University of the Potomac Chicago   June 29, 2020 . . . #onlinedegrees.   (Exhibit 20)

t.      The Facebook entries were made or authorized by Defendant Potomac College, LLC, doing business as University of the Potomac, and in some cases reference its 1991 establishment date.  DePinto, Smith and Ford were each aware of them.

52.    The purpose and effect of these acts and statements was to convince Plaintiffs and

other students that the Chicago campus could issue degrees.

53.     While Defendants were making the misrepresentations outlined above, they knew with certainty that the Chicago campus was not authorized to grant degrees, as evidenced by the following:

        a.      On August 14, 2019, University of the Potomac Chicago was explicitly made aware, in a letter from IBHE, that its application to operate as a degree-granting institution was incomplete and had not been approved. (Exhibit 6)

        b.      On August 21, 2019, the U.S. Immigration and Customs Enforcement Student and Exchange Visitor Program sent a Request for Evidence to University of the Potomac, raising questions about the attendance of students who University of the Potomac reported as full-time attendees at the Washington, D.C. location, but whose addresses were in Illinois. The university's response was, "University of the Potomac has students who are enrolled in our programs who live long distance. [sic]" (Exhibit 12, pp. 2-3)

        c.      The statement or implication that persons living in the Chicago area were commuting to the Washington location was false.

54.     The authority of the Chicago campus to issue degrees was particularly material to foreign students such as Plaintiffs, in that attending a degree-granting institution that complies with the regulatory requirements of the state where the campus is located (those of IBHE) was necessary to maintain their visa status.

55.     The Chicago campus sought out such foreign students.  Over 90% of the students were foreign students.

## FACTS RELATING TO PLAINTIFF SOO

56.     Following DePinto's in-person announcement that the Chicago campus would begin offering degree programs in the fall 2019 term, and in reliance on the representations that it was entitled to offer degree-granting programs, Plaintiff Soo enrolled at the Chicago campus for a

master's in healthcare administration degree from September 2019 to April 2022, when she graduated with the purported degree. Previously, she had been enrolled at the Chicago campus in an English as a Second Language class.

57. Plaintiff Soo paid $35,000 tuition and fees for the program and spent nearly three years in the program.

58. Plaintiff Soo paid tuition using credit cards. Payments were transmitted electronically from the bank to the University of the Potomac. Statements showing the payments were sent by mail or electronic transmission by the University of the Potomac to Plaintiff Soo.

59. The sums paid by Plaintiff Soo are typical of Defendants' tuition charges.

60. As a result of Defendants' deception, Plaintiff Soo suffered lost time and income.

61. In April and May 2022, Plaintiff Soo requested an enrollment letter specifying the location of the Chicago campus in order to show that she was qualified for employment. (Exhibit 21)

62. After making inquiries about Defendants' qualification to issue degrees, Plaintiff Soo discovered, in 2023, that the Chicago campus was not authorized to offer degree-granting programs.

**FACTS RELATING TO PLAINTIFF SANA HAMID ALI**

63. On May 10, 2019, Plaintiff Sana Hamid Ali received an email announcing that the University of the Potomac had been working through the approval process with the "State of Illinois Department of Higher Education" and stating, "You can find a list of all of our degree programs that we offer on our website, www.potomac.edu." (Exhibit 14)

64. Ms. Ali replied to the email on the same day, stating her interest in a graduate program and asking for help with enrollment. (Exhibit 22)

65. In reliance on the representations that it was entitled to offer degree-granting programs, Ms. Ali enrolled at the Chicago campus for a master's in healthcare administration degree. Because she was pregnant at the time she enrolled, she began her courses in January 2020.

66. From January 2020, through at least March 2022, Ms. Ali received periodic updated

14

U.S. Immigration and Customs Enforcement forms, specifically the I-20. Each time the form was issued, it stated that Ms. Ali was enrolled in a master's program and listed the school address as 1401 H Street NW, Suite 100, Washington, DC 20005. (Exhibit 23)

67.     On April 12, 2022, University of the Potomac issued a Curriculum Practical Work authorization for Ms. Ali, which stated that she was a student in the Master of Science in Health Administration program and listed the school address as 1401 H Street NW, Suite 100, Washington, DC 20005. (Exhibit 24)

68.     In April 2022, Ms. Ali requested enrollment-related documents. The issuance of such documents is prohibited without IBHE authority.

69.     Instead of issuing the requested documents, DePinto, the Chicago campus director, without the knowledge or consent of Ms. Ali, transferred her enrollment to the University of the Cumberlands and provided Ms. Ali with enrollment documents issued by the University of the Cumberlands.

70.     Ms. Ali eventually learned that this had been done, and that it was done because the Chicago campus was not authorized to issue degrees or the enrollment document for international students.

71.     Ms. Ali also paid tuition for the program and spent nearly three years in the program.

72.     As a result of Defendants' deception, Plaintiff Ali suffered lost time and income.

## CLASS ALLEGATIONS

73.     Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).

74.     Plaintiffs request that this Court certify a class of all persons who were enrolled in a purported degree-granting program at the Chicago campus of the University of the Potomac.

75.     The number of class members exceeds 100, and the class is so numerous that joinder would be impracticable.

76.     There are questions of fact and law which are common to all members of the class,

which common questions predominate over any questions affecting individual members of the class.

77.     All members of the class have been subject to and affected by a uniform course of conduct, consisting of the misrepresentation and failure to disclose the degree-granting status of the Chicago campus.

78.     The common questions of law and fact include, but are not limited to:

a.      Whether Defendants misrepresented to students that the Chicago campus was a degree-granting institution;

b.      Whether enrolling students in a degree-granting program is a representation that the enrolling institution has authority to grant degrees;

c.      Whether Defendants intended that students rely upon the concealment, suppression, or omission of the material fact that the Chicago campus was not authorized to grant degrees;

d.      Whether Defendants' misrepresentations and omissions regarding accreditation constitute a deceptive act or practice under the ICFA;

e.      Whether Defendants' conduct in operating an unauthorized degree program is unfair under the ICFA such that it offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers;

f.      Whether Defendants' misrepresentations and omissions regarding accreditation constitute fraudulent concealment;

g.      Whether the individual Defendants violated RICO.

79.     Plaintiffs' claims are typical of the claims of the class members.  Plaintiffs and class members' claims are based on the same legal and factual theories.

80.     Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of, the putative class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other putative class members, who each have the

same claims. Plaintiffs are members of the putative class and their interests coincide with, and are not antagonistic to, those of the other putative class members.

81.     Plaintiffs are represented by counsel who are experienced in litigating complex consumer protection cases and class action matters in both state and federal courts and who have extensive knowledge on issues of higher education law, consumer protection, and student debt.

82.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.     Defendants have acted in the same unlawful manner with respect to all class members;.

     b.     A legal ruling concerning the unlawfulness of Defendants' representations and omissions would vindicate the rights of every class member; and

     c.     Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense as well as prevent possible inconsistent results. Litigating individual lawsuits in the present case would be a waste of judicial resources and addressing the common issues in one action would aid judicial administration.

## **COUNT I – ICFA – MISREPRESENTATION**

83.     Plaintiffs incorporate the allegations in paragraphs 1-82.

84.     This claim is against all Defendants.

85.     The ICFA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.  (815 ILCS 505/2)

86.     As set forth above, Defendants engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under 815 ILCS 505/2.

87.     These deceptive acts or practices include, but are not limited to, misrepresentations

17

to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

88.     The act of enrolling students in a degree program is a representation that the enrolling institution, here the Chicago campus of the University of the Potomac, had authority to grant degrees.

89.     As set forth above, other misrepresentations were contained in widely distributed materials received and reviewed by Plaintiffs and the class, including the emails in Exhibits 3, 13, 14, 15, 17, 18, and 19, the statements at the June 2019 ESL graduation, the enrollment agreements (such as Exhibit 16), the Facebook material (Exhibit 20), the student roundtables described above, and posters on the Chicago campus such as Exhibit 27.

90.     Each of the Defendants intended for Plaintiffs and the class to rely upon these misrepresentations.

91.     Defendants DePinto and Smith personally made such representations.

92.     Defendant Ford directed and authorized the operation of degree programs at the Chicago campus, which necessarily includes the making of representations to students that such programs are available.

93.     Defendants' violations took place repeatedly and were designed to mislead and deceive students regarding material facts about the University of the Potomac, namely its ability to grant degrees.

94.     Plaintiffs and the class members did rely upon Defendants' representations that the Chicago campus was authorized to grant degrees, by enrolling in degree programs at the Chicago campus.

95.     As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm, including costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

18

96.     Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

        i.       Compensatory damages;

        ii.      Punitive damages;

        iii.     Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

        iv.     All such further and other relief as the Court deems just and appropriate.

## COUNT II – ICFA – OMISSIONS OF MATERIAL FACT

97.     Plaintiffs incorporate the allegations in paragraphs 1-82.

98.     This claim is against all Defendants.

99.     The ICFA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.  (815 ILCS 505/2)

100.     As set forth above, Defendants have engaged in a course of trade or commerce that constitutes deceptive acts or practices declared unlawful under ICFA §2, 815 ILCS 505/2.

101.     The deceptive acts or practices include, but are not limited to, the failure to disclose to Plaintiffs and the class that University of the Potomac was not authorized to grant degrees at the Chicago campus, notwithstanding the numerous references to the granting of such degrees in communications to students, such as the emails in Exhibits 3, 13, 14, 15, 17, 18, and 19, the statements at the June 2019 ESL graduation, the enrollment agreements (such as Exhibit 16),  the Facebook material (Exhibit 20) and posters on the Chicago campus such as Exhibit 27.

102.     In addition, the act of enrolling students in a degree program and taking money for

19

such program  is a communication that the Chicago campus of the University of the Potomac had authority to grant degrees.

103.    The Illinois Administrative Code also forbids false, erroneous, or misleading statements to students and the public regarding, among other things, "material facts concerning the institution and the program or course of instruction" that are "likely to affect the decision of the student to enroll." 23 Ill. Adm. Code §1030.60(a)(7) provides:

> The information the institution provides for students and the public shall accurately describe the programs offered, program objectives, length of program, schedule of tuition, fees, and all other charges and expenses necessary for completion of the course of study, cancellation and refund policies, and such other material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll. This information, including any enrollment agreements or similar agreements, shall be available to prospective students prior to enrollment.

104.    Defendants misrepresented and omitted the nature and extent of University of the Potomac's institutional accreditation.

105.    Each of the Defendants intended for Plaintiffs and the class to rely upon these omissions.

106.    Defendants DePinto and Smith made the communications containing the omissions.

107.    Defendants Ford directed and authorized the conduct of a degree program at the Chicago campus and the making of such communications to students.

108.    Defendants' violations took place repeatedly and were designed to conceal, suppress, and omit the University of the Potomac's lack of authority to grant degrees from Plaintiffs and the class.

109.    Plaintiffs and the class members did rely upon Defendants' failure to disclose that the Chicago campus was not authorized to grant degrees, when they enrolled in degree programs at the Chicago campus and paid large sums for tuition and expenses.

110.    As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of tuition, debt incurred in order to attend University of

the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

111.    Defendants have therefore violated the ICFA, 815 ILCS 505/2, and Plaintiffs and the class have been damaged in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

      i.      Compensatory damages;

      ii.     Punitive damages;

      iii.    Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

      iv.    All such further and other relief as the Court deems just and appropriate.

**COUNT III – ICFA – UNFAIRNESS**

112.    Plaintiffs incorporate the allegations in paragraphs 1-82.

113.    This claim is against all Defendants.

114.    To determine whether conduct is unfair, Illinois courts consider whether the practice offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to customers.

115.    A practice offends public policy when it violates a standard of conduct contained in an existing statute, regulation, or common law doctrine that typically applies to such a situation.

116.    The Illinois Administrative Code requires that degree-granting educational institutions satisfy the IBHE that they provide the educational benefits associated with the degrees granted.  23 Ill. Admin. Code § 1030.60(a) provides:

(a) Criteria for New Certificate and Degree Programs

The Board requires that a non-public or out-of-state public institution demonstrate that it

21

can maintain and operate a new degree program that meets the standard criteria for those degree programs. The following standard criteria are designed to measure the appropriateness of the stated educational objectives to the certificate or degree programs of a given institution and the extent to which suitable and proper processes have been developed for meeting those objectives:

> 1) All rules, criteria, and procedures defined in Section 1030.30 shall apply.

> 2) The objectives of the certificate or degree program must be consistent with what the degree program title implies.

> 3) The requested certificate or degree program shall be congruent with the purpose, goals, objectives and mission of the institution.

> 4) The caliber and content of the curriculum shall assure that the stated certificate or degree objectives for which the program is offered will be achieved.

> 5) The institution shall have adequate and suitable space, equipment and instructional materials to support institutional programs.

> 6) The education, experience and other qualifications of directors, administrators, supervisors and instructors shall ensure that the students will receive education consistent with the objectives of the program. . . .

> 8) Fiscal and personnel resources shall be sufficient to permit the institution to meet obligations to continuing programs while assuming additional resource responsibilities for the new certificate or degree program.

> 9) The faculty, staff and instructors of the institution shall be of good professional reputation and character.

117. 23 Ill. Admin. Code § 1030.60(b) requires that the IBHE "shall approve all new certificate and degree programs in institutions described in Section 1030.10(b) that are not otherwise exempted in Section 1030.10(c)."

118. The University of the Potomac Chicago campus was an institution described in §1030.10(b) that was not otherwise exempted in §1030.10(c).

119. Section 1030.10 requires any private or public person, group of persons, partnership or corporation that is or contemplates offering degrees or credit bearing instruction in Illinois above the high school level to obtain authorization from the IBHE.

120. Defendants violated public policy by enrolling students in degree programs that had not been approved by the IBHE and did not meet IBHE requirements.

121.    Defendants' conduct offends public policy and is unfair under the ICFA.

122.    Defendants' conduct was also immoral, unethical, and oppressive under the ICFA, in that Defendants collected substantial amounts of money for unapproved and deficient programs.

123.    Defendants' conduct caused substantial injury to large numbers of consumers.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

   i.  Compensatory damages;

   ii.  Punitive damages;

   iii.  Reasonable attorney's fees, litigation expenses and costs under the ICFA; and

   iv.  All such further and other relief as the Court deems just and appropriate.

<strong>COUNT IV WAS DISMISSED AND IS NOT BEING REPLED</strong>

<strong><u>COUNT V – FRAUDULENT CONCEALMENT</u></strong>

124.    Plaintiffs incorporate the allegations in paragraphs 1-82.

125.    This claim is against Defendants University of the Potomac at Chicago LLC, Potomac College, LLC, d/b/a University of the Potomac, and Linden East, LLC.

126.    Defendants engaged in numerous communications and acts designed to convince Plaintiffs and the class that the University of the Potomac's Chicago campus had degree programs, while concealing from Plaintiffs and the class that the University of the Potomac Chicago campus was not authorized to grant degrees.

127.    These misrepresentations were contained in widely distributed materials received and reviewed by Plaintiffs and the class, including the emails in Exhibits 3, 13, 14, 15, 17, 18, and 19, the statements at the June 2019 ESL graduation, the enrollment agreements (such as Exhibit 16), the Facebook material (Exhibit 20), and posters on the Chicago campus such as Exhibit 27.

128.    In addition, the act of enrolling students in a degree program and taking money for such program is a communication that the Chicago campus of the University of the Potomac had authority to grant degrees.

129. This information was material to students in deciding whether to enroll and remain enrolled at University of the Potomac.

130. Whether degrees are authorized is highly material to students' decision to enroll and remain enrolled in an institution of higher education.

131. Defendants had a duty to inform Plaintiffs and the class about University of the Potomac's lack of degree granting authority, as well as a duty to not make false or misleading statements concerning the nature and extent of University of the Potomac's degree-granting authority.

132. The Illinois Administrative Code required Defendants to "accurately describe" all "material facts concerning the institution and the program or course of instruction as are likely to affect the decision of the student to enroll." 23 Ill. Adm. Code § 1030.60(a)(7).

133. Defendants could have, but did not, publicly disclose the truth about University of the Potomac's degree-granting authority.

134. Due to Defendants' fraudulent concealment, as well as Defendants' affirmative representations, Plaintiffs and the class had no reason to seek out alternative sources of information regarding University of the Potomac's degree-granting authority status.

135. Plaintiffs and the class members did rely upon Defendants' concealment of the fact that the Chicago campus was not authorized to grant degrees, by enrolling in degree programs at the Chicago campus and paying large sums for tuition and expenses.

136. As a result of Defendants' conduct, Plaintiffs and the class have suffered, and will continue to suffer, actual harm in the form of tuition, debt incurred in order to attend University of the Potomac, costs incurred to attend University of the Potomac, lost wages, damage to credit, loss of eligibility for financial aid programs, and a diminution in the value of their course credits and degrees, among other harms.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class for:

      i.      Compensatory damages;

      ii.     Punitive damages;

     iii.    Reasonable attorneys' fees, litigation expenses and costs under the ICFA; and

     iv.   All such further and other relief as the Court deems just and appropriate.

## COUNT VI – RICO

137.    Plaintiffs incorporate the allegations in paragraphs 1-82.

138.    This claim is against Defendants Rosanna DePinto, Arthur L. Smith Jr., also known as Lee Smith; and Andrea Ford, who are the RICO persons.

139.    The University of the Potomac was the RICO "enterprise."

140.    The purpose of the enterprise was the operation of an institution of higher education which offered bachelors degrees and masters degrees.

141.    The enterprise affected interstate and foreign commerce, in that it had locations in three states and specifically sought to enroll foreign students.

142.    DePinto and Smith operated the Chicago campus and were employees of Potomac College, LLC, d/b/a University of the Potomac (Smith), or its parent Linden East, LLC (DePinto).

143.    Ford was a principal executive of and was employed by Potomac College, LLC, d/b/a University of the Potomac. She was in charge of operations at the Chicago campus and dealings with IBHE.

144.    DePinto, Smith and Ford conducted the affairs of the University of Potomac through a pattern of mail and wire fraud, in violation of 18 U.S.C. §1962(c). *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001).

145.    The fraudulent conduct included:

     a.    The enrolling of students in a degree program, which is a representation that the enrolling institution, here the Chicago campus of the University of the

Potomac, had authority to grant degrees;

b.     Accepting money for such program;

c.     Misrepresentations to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

d.     Failure to disclose the lack of degree granting authority;

e.     The emails in Exhibits 3, 13, 14, 15, 17, 18, and 19, the statements at the June 2019 ESL graduation, the enrollment agreements (such as Exhibit 16), the Facebook material (Exhibit 20), and posters on the Chicago campus such as Exhibit 27.

146.    Plaintiffs and the class members did rely upon Defendants' scheme, by enrolling in degree programs at the Chicago campus and paying large sums for tuition and expenses.

147.    18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

148.    18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

149.    The conduct complained of lasted from 2019 through 2023 and affected at least 100 victims.

150.    Use of interstate wires in furtherance of the scheme included:

a.     The sending of emails that represented that the Chicago campus was

26

authorized to grant degrees.

b.      Posting material on Facebook containing such representations (Exhibit 20);

c.      Posting Exhibit 27 on the Internet.

d.      The sending of emails to bill students for tuition payments.  E.g., Dec. 12, 2019 email (Exhibit 25); Dec. 20, 2020 email (Exhibit 26).

e.      The receipt of tuition payments from Plaintiffs and other students via credit and debit cards, each of which involves at least one interstate wire communication to authorize the transaction and a second to transmit the funds.  For example, Plaintiff Ko made such credit card payments on Jan. 24, 2020,  July 22, 2020,  July 30, 2020,  Aug. 1, 2020,  Aug. 5, 2020,  Aug. 10, 2020,  April 22, 2021 and Dec. 18, 2021, among many other occasions. Other students similarly used credit or debit cards to pay tuition and fees, resulting in thousands of wire transmissions.

f.      The electronic transmission of IRS form 1098-T, "Tuition Statement," to each student each year.

151.    Use of the mails in furtherance of the scheme included receipt of tuition and fee payments by check from Plaintiffs and other students.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class and against Defendants for:

i.      Treble damages;

ii.     Reasonable attorney's fees, litigation expenses and costs;

iii.    Such other relief as the Court deems just and appropriate.

## **COUNT VII – RICO**

152.    Plaintiffs incorporate the allegations in paragraphs 1-82.

153.    This claim is against Defendants Rosanna DePinto, Arthur L. Smith Jr., also known as Lee Smith; and Andrea Ford, who are the RICO persons.

154.    The University of the Potomac  was the RICO "enterprise."

155.    The purpose of the enterprise was the operation of an institution of higher education which offered bachelors degrees and masters degrees.

156.    The enterprise affected interstate and foreign commerce, in that it had locations in three states and specifically sought to enroll foreign students.

157.    DePinto and Smith operated the Chicago campus and were employees of  Potomac College, LLC, d/b/a University of the Potomac (Smith), or its parent Linden East, LLC (DePinto).

158.    Ford was a principal executive of and was employed by Potomac College, LLC, d/b/a University of the Potomac.  She was in charge of operations at the Chicago campus and dealings with IBHE.

159.    DePinto, Smith and Ford agreed to conduct the affairs of the University of Potomac by (a) misrepresenting that the Chicago campus was authorized to grant degrees and (b) use the mails and wires to collect money from students seeking such degrees.  This agreement violated 18 U.S.C. §1962(d).

160.    The conspiracy was carried out. The fraudulent conduct engaged in pursuant to such conspiracy included:

    a.    The enrolling of students in a degree program, which is a representation that the enrolling institution, here the Chicago campus of the University of the Potomac, had authority to grant degrees;

    b.    Accepting money for such program;

    c.    Misrepresentations to Plaintiffs and the class that the Chicago campus of University of the Potomac was authorized to grant degrees.

    d.    Failure to disclose the lack of degree granting authority;

    e.    The emails in Exhibits 3, 13, 14, 15, 17, 18, and 19, the statements at the June 2019 ESL graduation, the enrollment agreements (such as Exhibit 16), the Facebook material (Exhibit 20), and posters on the Chicago campus such

28

as Exhibit 27.

161.    Plaintiffs and the class members did rely upon Defendants' scheme, by enrolling in degree programs at the Chicago campus and paying large sums for tuition and expenses.

162.    18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

163.    18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

164.    The conduct complained of lasted from 2019 through 2023 and affected at least 100 victims.

165.    Use of interstate wires in furtherance of the scheme included:

a.      The sending of emails that represented that the Chicago campus was authorized to grant degrees.

b.      Posting material on Facebook containing such representations (Exhibit 20);

c.      Posting Exhibit 27 on the Internet.

d.      The sending of emails to bill students for tuition payments. E.g., Dec. 12, 2019 email (Exhibit 25); Dec. 20, 2020 email (Exhibit 26).

e.      The receipt of tuition payments from Plaintiffs and other students via credit and debit cards, each of which involves at least one interstate wire communication to authorize the transaction and a second to transmit the

29

funds. For example, Plaintiff Ko made such credit card payments on Jan. 24, 2020, July 22, 2020, July 30, 2020, Aug. 1, 2020, Aug. 5, 2020, Aug. 10, 2020, April 22, 2021 and Dec. 18, 2021, among many other occasions. Other students similarly used credit or debit cards to pay tuition and fees, resulting in thousands of wire transmissions.

      f.    The electronic transmission of IRS form 1098-T, "Tuition Statement," to each student each year.

166. Use of the mails in furtherance of the scheme included receipt of tuition and fee payments by check from Plaintiffs and other students.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and in favor of the class and against Defendants for:

      i.    Treble damages;

      ii.    Reasonable attorney's fees, litigation expenses and costs;

      iii.    Such other relief as the Court deems just and appropriate.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

please note that our suite number has changed

## JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*

Daniel A. Edelman

**LIST OF EXHIBITS**

1.     Purchase agreement for BIR assets

2.     Student handbook, April 2021

3.     June 4, 2019 email from DePinto to all Illinois students

4.     Letter from IBHE to Ford dated April 11, 2019

5.     Letter from IBHE to Ford dated June 21, 2019

6.     Letter from IBHE to University of the Potomac dated August 14, 2019

7.     IBHE recommendation to deny University of the Potomac authority to operate in the Chicago region, dated December 10, 2019

8.     Letter of March 4, 2022 from University of the Potomac to IBHE withdrawing application

9.     IBHE program inventory for University of the Potomac

10.    Email from IBHE general counsel dated Jan. 17, 2024

11.    September 21, 2020 letter from IBHE to Andrea Ford of the University of the Potomac

12.    February 10, 2022 letter from U. S. Immigration and Customs Enforcement to University of the Potomac

13.    April 17, 2019 email from Defendant Lee Smith to all Chicago campus students

14.    Email to Chicago campus students from Potomac College LLC d/b/a University of the Potomac dated May 10, 2019

15.    Email to Chicago campus students from Potomac College LLC d/b/a University of the Potomac dated May 13, 2019

16.    July 22, 2019 Ko "Enrollment Agreement" for a Master of Healthcare Administration degree

17.    November 19, 2019 email to all students enrolled in degree programs at the Chicago campus

18.    January 3, 2020 email from Defendant Smith to proctors at Chicago campus

19.    Email announcing October 1, 2020 virtual roundtable

20.    Facebook material

21.    Plaintiff Soo's request for an enrollment letter

22.    Ms. Ali's email re graduate program

23.    U.S. Immigration and Customs Enforcement form I-20s received by Ms. Ali

24.    April 12, 2022 Curriculum Practical Work authorization for Ms. Ali

25.    Email billing for tuition payments dated December 12, 2019

26.    Email billing for tuition payments dated December 20, 2020.

27.    Picture of Defendant Smith next to poster.

28.    March 24, 2020 Internet posting

29.    March 25, 2020 Internet posting

30.    November 1, 2019 email to Ms. Ali.

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\40344\Pleading\2d  Amended Complaint DAE 8-26-24_Pleading.WPD

34

## <u>CERTIFICATE OF SERVICE</u>

Daniel A. Edelman certifies that on August 28, 2024 this document was filed via ECF, causing a copy to be sent to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman